LOVEWELL *v.* BOWEN.

RHODES *v.* DRIVER.

Opinion delivered May 27, 1905.

1. ELECTION CONTEST—CUSTODY OF BALLOTS.—Where, in an election contest, the ballots of a certain township were produced in evidence by the board of election commissioners, they should remain in the control of the court, and in case of their production at a second trial by one of the election commissioners no presumption of official regularity will be indulged. (Page 455.)

2. SAME—GENUINENESS OF BALLOTS INTRODUCED.—Where, at the first trial of an election contest, the ballots of a certain township passed through the hands of the circuit judge and the attorneys for both sides without the discovery of any defect in them, the mere production at the second trial of what purported to ·be the same ballots, but in a fatally defective condition, by one of the election commissioners, shown to have been a strong partisan of contestees, and to have used improper means to influence voters, is not sufficient to prove their genuineness and integrity. (Page 455.)

3. SAME—MODE OF TAKING TESTIMONY.—Kirby's Digest, § 2861, providing for the taking of evidence in election contests by depositions, is exclusive of any other method, and mandatory. (Page 456.)

4. SAME—MISTAKE AS TO TOWNSHIP LINES.—It was not error to count the votes of persons who lived outside the true township lines, if they lived within the lines recognized by the election judges and universally acted upon as the true lines of the township. (Page 457.)

5. OPINION ON FORMER APPEAL—CONCLUSIVENESS.—A statement in the opinion of this court in this case on a former appeal as to what was proved at the first trial was not conclusive on the trial court as to such fact on a second trial, where the cause was remanded for a new trial with leave to introduce new evidence. (Page 457.)

Appeal from Mississippi Circuit Court.

FELIX G. TAYLOR, Judge.

Reversed.

*James M. Greer, S. S. Semmes, George W. Thomason, John M. Rose* and *Charles T. Coleman,* for appellants.

A board of supervisors cannot disfranchise voters by wholesale by establishing townships which human skill cannot locate; they have a right to vote somewhere in the county. 45 La. Ann. 333; 12 So. 508; 34 Neb. 372; 5 Oh. 573; 6 Am. Law Rev. 694. The testimony of John B. Driver upon this point was incompetent. 70 Ark. 240. Votes which would have been cast for contestants in Monroe Township but for the obstructive tactics of one of the election judges should be counted. Const. Ark. art. 3, § 2; 6 Am. & Eng. Enc. Law, 433; 4 Cong. Elec. Cases, 101. The failure of the judges to indorse their initials on the ballots of Pecan Township does not discredit the ballots.

159 Mo. 51; 80 N. W. 136; McCrary, Elections, 249; 50 Ark. 94; 53 Kan. 594; 54 N. W. 280; 153 Ind. 440; 13 Queb. L. R. 64; 20 Low. Can. Jur. 22; 59 Minn. 6; 130 Ind. 561. The testimony of witness whose names are not on the poll tax list that they paid their poll tax is incompetent to contradict the poll tax record. 70 Mass. 43; Paine, Elec. § 756; 105 Pa. St. 488; 21 Wis. 574; Bailey, Elec. Cas. 453; Bright. Lead. Cas. Elec. 492; 2 Brewst. 129. The returns from Troy Township are discredited on acounts of frauds committed by the election officers, and should be set aside. 6 Am. & Eng. Enc. Law, 355; 3 Cong. El. Cases, 62; 6 Id. 177; 9 Mont. 608; 70 Ark. 240; 32 Ark. 337; 61 Ark. 247.

*Driver & Harrison* and *Berry & Shafer,* for contestees.

Where there is evidence to support the finding of the court sitting as a jury, the findings will not be disturbed. 53 Ark. 161; 68 Ark. 83; 97 Mo. 311. Depositions taken in Fletcher and Pecan townships were properly admitted. 23 Ark. 244. The question as to illegal poll taxes is *res judicata.* 26 Ark. 17. Oral evidence is admissible in the trial of contested election cases *de novo* in the circuit court. 61 Ark. 287; 58 Ind. 302.

HILL, C. J. These consolidated cases involve contests over the office of sheriff and clerk of Mississippi County. This is the second appeal. The first appeal is reported as *Rhodes v. Driver,* 69 Ark. 501. The case was reversed on the former appeal for not discrediting and disregarding the returns from Fletcher Township, and remanded with directions to allow the parties litigant to take additional evidence if desired. Much additional evidence was taken, and the court adjudged that Bowen and Driver were elected sheriff and clerk, respectively, and their opponents appealed.

In summarizing the result of the votes and the various contentions over the votes in different townships, the appellees make this statement:

"With Pecan included and Troy excluded, Driver's vote would be 780, less 83, the vote given him by the returns in Troy, making a total of 697 in the whole county. The foregoing com-

putation gives Lovewell a majority of two votes, and Driver a majority of 48 in the whole county."

The appellant attacks many of the votes included in this summary, but, for the purpose of this opinion, this will be taken as a basis from which to discuss the effect of the rulings of the court on some of the questions presented.

1. *Should Pecan Township be included in the returns?* The appellees thus state the situation in regard to the facts and ruling on this township:

"Upon the second trial of this cause in the circuit court, while examining the poll books and ballots of Pecan Township, it was discovered by the contestees (appellees) that none of the ballots cast in this precinct bore the initials of one of the judges, as required by the statute. It was thereupon moved by counsel for contestees that the returns from Pecan Township be stricken out and disregarded. This motion was afterward sustained by the court. The returns from Pecan Township gave Lovewell 61, Rhodes 65, Bowen 11 and Driver 9."

In the former trial these ballots were introduced in evidence, were examined by the circuit judge, and passed to the respective attorneys, and their agreement with the poll books tested. They were produced at this trial by the chairman of the board of election commissioners, and it was found that, instead of having the initials of one of the judges upon them, they had a mark like this, #. Section 2838, Kirby's Digest, provides that the election commissioners shall preserve for a period of six months the ballots cast at an election, and after that period destroy them unless they are notified of a civil suit or criminal prosecution where they will be required as evidence, in which event they must be produced in court from an unbroken package in which they shall be contained while being preserved. The control of the election commissioners over the ballots cease when they produce them in court. Then they become evidence in the cause, and pass under the dominion and control of the court. Hence it follows that the production of these ballots from the election commissioners, after they had been turned into court, was not from the proper custodian of them, and no presumptions of

official regularity can be indulged on account of the source whence produced. This election officer was admittedly a strong partisan of the appellees in the election, and there is evidence tending to prove that he used whisky and other improper means to influence voters, and that he attempted to bribe the county judge, while the contest was pending before him. No evidence from him is found that these ballots were in the condition shown on this trial when he received them. The appellees seemingly rested entirely upon their production by the election commissioner being sufficient to prove their genuineness and integrity.

That proof failed to apply, and, no testimony of their genuineness and integrity and unchanged condition being offered, this question rests entirely upon the ballots themselves as produced by this election officer. In view of the evidence adduced against him, no presumptions can be indulged in their favor. The fact that they passed through the hands and under the inspection of the circuit judge and the attorneys for both sides without discovering this fatal defect is a circumstance against them, and this is especially so in this case because the attention of court and counsel was then focused on defective markings of ballots by the judges, as that was one of the vital questions presented in regard to Fletcher Township at the time these ballots were first being examined. The court is of opinion that the circuit court did not have legally sufficient evidence that these were the indentical original ballots, in unaltered form, to exclude Pecan Township, and therefore in the calculation it should be included.

2. *As to Troy Township.* The integrity of the returns from this township was successfully impeached. It is unnecessary to review the evidence on that subject, because the appellees evidently recognized that fact, and on the trial produced the oral testimony of the judges of election to sustain the returns. The appellant objected to the introduction of oral testimony. If the oral testimony was properly admitted, then there is legally sufficient evidence to sustain the finding of the trial court in including it in the count for appellees; otherwise, there is not. In *Davis* v. *Moore,* 70 Ark. 240, this court held that Kirby's Digest, § 2861, providing for the evidence in election contests to be taken by depositions, was exclusive of all other methods of taking testi-

mony in these cases, and the terms of the statute on the subject were mandatory. It is insisted that this decision should not be followed. The case was decided after mature consideration, and two of the judges dissented. If the question was presented as an original proposition, taking the individual views of the judges now constituting the court, it might receive a different construction. It established a rule of practice, and was decided prior to this trial, and it cannot be said that the rule established is a bad one, or that it works unjustly, and the court declines to overrule that decision. That necessarily excludes the returns from Troy Township.

3. Oral testimony was also admitted on the question of township lines, and by it 28 votes in Monroe Township and 7 votes in Fletcher Township were proved to have been cast by parties living without the townships. The court erred in excluding these votes in Monroe Township for another reason. While the township lines were proved by the oral testimony, yet it was shown that for many years the lines recognized by the election judges in this instance had been universally acted upon as the true lines of the township. Under such circumstances the voters should not be disfranchised on account of universal ignorance of the true technical lines. If authorities are needed on this proposition, those cited in appellants' brief will be found to sustain it.

These conclusions, using the basis of appellees' calculation above given, elect appellant Lovewell by 37 votes over Bowen, and leave Driver a majority of 13 votes over Rhodes.

4. On the former appeal, the court said: "The contestees have shown that several hundred electors of Mississippi County had their poll tax paid by others, and that they were not qualified electors. But they have only shown that about 116 of these voted, and these are all that we could consider in the count. The proof shows that of these Rhodes received 107, while Driver received 9, and that Lovewell received 106, while Bowen received 8. In the summary of appellees above quoted, 107 votes are excluded from Rhodes, and 106 from Lovewell on this account." Appellees contend that this is justified by the former evidence, and this statement from the opinion. The opinion did not intend

to establish this as a fact beyond proof to the contrary in the new trial, but merely stated the situation as then developed, and leave was given for new evidence to be adduced on all points.

On the second trial of this cause many electors included in said 106 and 107 lists excluded by the testimony then before this court took the witness stand, and testified that they authorized the payment of their poll tax by the parties who paid them, or afterward ratified the payment in good faith, and repaid the amount. Many were proved to be tenants whose taxes were paid by their landlords, and with their consent charged to their accounts and paid out of their crops when gathered. When payment by others is valid and when invalid is discussed, and the line clearly marked, in *Whittaker* v. *Watson,* 68 Ark. 555. Counsel differ as to the exact number properly proved under this rule, but an exact estimate is not necessary, for there can be no doubt that more than sufficient were fully proved to have been paid in good faith through others to wipe out the apparent majority of 13 for Driver and give Rhodes a majority over him, and to increase the majority already shown of Lovewell over Bowen.

Appellants also proved many illegal votes were cast on "gift receipts," as they are called in the record, to have been cast for Bowen and Driver. A discussion and calculation of them is unnecessary, as these conclusions call for a reversal of the case.

Other questions are presented and argued, but it is not thought that it is necessary to discuss them because no new questions of law are involved.

The case is reversed and remanded, with directions to grant appellants a new trial.